

**seterus**™

PO Box 1077; Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way; Suite 200; Beaverton, OR 97005

**Payments**
PO Box 11790; Newark, NJ 07101-4790

**Correspondence, Inquiries, and Notices**
PO Box 1077; Hartford, CT 06143-1077 .

Phone:  866.570.5277
Fax: 866.578.5277
www.seterus.com

L796AD.1

TROJANIAK, STANISLAW
TROJANIAK, MARIA
51 HADLEY AVE
CLIFTON, NJ 07011

May 17, 2017
Loan number:
Serviced by Seterus, Inc.

RE: Borrower name:  TROJANIAK, STANISLAW and TROJANIAK, MARIA:
    Property: 51 HADLEY AVE
        CLIFTON, NJ  07011-0000

Our records indicate that you or your firm represents the borrower(s) listed above.

Enclosed is information related to your client's loan. This letter and enclosures shall not be construed as a waiver of the loan owner's or Seterus, Inc.'s rights under the loan documents and any applicable laws.

If you or your firm no longer represents the borrower(s), please notify us at 866.570.5277 or PO Box 1077; Hartford, CT 06143-1077.

We have approved an option to help the above-referenced borrower. A copy of the agreement is enclosed.

Please work with the above named borrower(s) to file the agreement with the court, provide all required notifications thereof and, if required, obtain appropriate court approval. If the appropriate court approval is not obtained by July 01, 2017, please continue to make the modified monthly payment amount under the terms of the attached agreement while the modification is in process to be fully executed.

In addition, the initial payment will need to be remitted as specified in the agreement. If we do not receive the initial payment by July 01, 2017, the agreement and funds may not be accepted. If the agreement is not accepted, it will be considered null and void, and we will be under no obligation to renew this offer.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

TROJANIAK, STANISLAW
TROJANIAK, MARIA
May 17, 2017
Loan number:

All loan payments should be made payable to Seterus, Inc., and the loan number must be written on the payment.

If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

Sincerely,


Seterus, Inc.


Enclosures

# seterus™

PO Box 1077; Hartford, CT 06143-1077

**Don't delay! Take advantage of this great offer by July 01, 2017.**

L482AJ.1

TROJANIAK, STANISLAW
TROJANIAK, MARIA
51 HADLEY AVE
CLIFTON, NJ 07011

Loan number:                        serviced by Seterus, Inc.

May 17, 2017

RE: Property: 51 HADLEY AVE
            CLIFTON, NJ 07011-0000
    Investor number:

Dear TROJANIAK, STANISLAW and TROJANIAK, MARIA:

We are pleased to offer you the enclosed Loan Modification Agreement. This will permanently change the terms of your mortgage. If you comply with the conditions stated below and the terms of the required Trial Period Plan, we will modify your mortgage and may waive all prior late charges that remain unpaid.

Please read the attached summary of your modified mortgage and the Loan Modification Agreement to better understand the proposed terms of your modified mortgage.

Please refer to the enclosed Loan Modification Agreement for your first payment date. The total amount of your payment is $2,128.89. This includes the principal and interest shown in the Agreement plus regularly scheduled escrow payments of $1,018.67. The escrow payment amount includes taxes, insurance, and private mortgage insurance as appropriate for your loan. The escrow portion of the payment is subject to change due to increases or decreases in taxes, insurance, and/or private mortgage insurance premiums, and the regularly scheduled payment amounts may change to reflect those increases or decreases. We will advise you if and when payments change.

**To Accept This Offer:**

D **Sign and return** both copies of the Loan Modification Agreement to us in the enclosed, pre-paid envelope by July 01, 2017. We encourage you to make a copy of all documents for your records.

Seterus NMLS ID Number: 787641
THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. COLORADO: SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

TROJANIAK, STANISLAW
TROJANIAK, MARIA
May 17, 2017
Loan number:

- You must sign both copies in the presence of a notary public and return the notarized copies to us. You should be able to obtain notary services at your financial institution.

If we do not receive the Agreements, signed and notarized by all borrower(s) by **July 01, 2017**, we may revoke our offer, not accept the Agreement, and consider it null and void. We are not obligated to renew this offer.

D  **Make all remaining trial period payments** within the month they are due. If the trial period payments are made after the month in which they are due or in amounts different from the trial period payment amount required, your mortgage may not be modified.

All loan payments should be made payable to Seterus, Inc., and your loan number should be written on the payment.

Your credit score may be affected by accepting a modification. For more information about credit scores, go to www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

Sincerely,


Seterus, Inc.

Enclosures

Attachments: Summary of Your Modified Mortgage, two copies of the Loan Modification Agreement, pre-paid return envelope

Seterus, Inc.
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005

Business Hours (Pacific Time)
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

TROJANIAK, STANISLAW
TROJANIAK, MARIA
May 17, 2017
Loan number:

## SUMMARY OF YOUR MODIFIED MORTGAGE

**NEW/UNPAID PRINCIPAL BALANCE:** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **We may waive ALL late charges that have accrued and remain unpaid at the end of the trial period if you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments.**

**INTEREST RATE:** The interest rate on your modified loan will not be adjusted. As a result, the existing interest rate on your mortgage loan will be applied to your modified loan as noted in the attached Loan Modification Agreement.

**TERM EXTENSION:** We will extend the term of your mortgage to reduce your mortgage payment. This means we will spread your payments over a longer period.

**ESCROW ACCOUNT:** The terms of your Loan Modification Agreement require that you pay into an escrow account an amount sufficient to cover your property taxes, insurance premiums, and other required fees. Any prior waiver of escrows by your lender is no longer in effect. We will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that payments from your escrow account will adjust if your taxes, insurance premiums, and/or assessment amounts change, so the amount we must place in escrow will also adjust, as permitted by law. This means that your payments may change. Your initial escrow payment will be $1,018.67, and is included in the loan payment noted in Section 2 of the enclosed Loan Modification Agreement.

**ESCROW SHORTAGE:** We have determined that there is a shortage of funds in your escrow account in the amount of $1,971.71 due to the timing of your tax and insurance payments. **Please contact us if you wish to pay the total shortage now in a lump sum. Paying this amount now in a lump sum will reduce your new regularly scheduled mortgage payment.**

**PAYMENT TERMS:** The enclosed Loan Modification Agreement includes your principal and interest payment amount in Section 2 showing your payments for the life of your modified loan after the trial period.

**FEES:** There are no fees or other charges for this modification.

**LOAN MODIFICATION AGREEMENT:** Please read the enclosed Loan Modification Agreement carefully and make sure that you understand it. If you have any questions, please contact us at 866.570.5277. For borrowers having difficulty making their payments, we have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

Page 3 of 3

Seterus, Inc.
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005

Business Hours (Pacific Time)
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

--------------------------- [Space Above This Line For Recording Data] ---------------------------

L790AJ.1

Loan Number:
Investor Loan Number:
Seterus NMLS ID Number:

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 17th day of May, 2017, between TROJANIAK, STANISLAW, TROJANIAK, MARIA ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated November 10, 2003 and recorded in Book or Liber M4075, at page(s) 24, Instrument Number 2004000046, of the County Records of Passaic and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

    51 HADLEY AVE, CLIFTON NJ 07011-0000,

the real property described being set forth as follows:
    Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of July 01, 2017, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $226,342.43, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

TROJANIAK, ST/.....
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179 1.01 (rev. 06.12)    Page 1 of 8    DFL

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.125%, from June 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $1,110.22, beginning on the 1st day of July, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 5.125% will remain in effect until principal and interest are paid in full. If on June 01, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of 1,018.67 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing July 01, 2017.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make

TROJANIAK, STANISLAW
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT   Form 3179 1.01 (rev. 06.12)

DFL
Page 2 of 8

all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

TROJANIAK, STANISLAW
LOAN MODIFICATION AGREEMENT---Single Family---Fannie Mae UNIFORM INSTRUMENT   Form 3179 1.01 (rev.06.12)

DFL
Page 3 of 8

(g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

7.  Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

8.  Borrower will pay to Lender, on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

TROJANIAK, STANISLAW
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179 1.01 (rev. 06.12)

DFL
Page 4 of 8

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9.  Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with

obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. D

In Witness Whereof, the Servicer and I have executed this Agreement.

_____     _____
Seterus, Inc.   Authorized Signer                                Date

_____     _____
TROJANIAK, STANISLAW                                             Date
51 HADLEY AVE, CLIFTON, NJ 07011

_____     _____
TROJANIAK, MARIA                                                Date
51 HADLEY AVE, CLIFTON, NJ 07011

_____[Space Below This Line For Acknowledgments] _____

CERTIFICATE OF ACKNOWLEDGMENT

State of **NEW JERSEY**                              )
                                                     )
County of_____              )


            On the_____day of___._____,_____,
before me,_____, a Notary Public of the State
and County aforesaid personally appeared  **TROJANIAK, STANISLAW and TROJANIAK, MARIA,** who I am
satisfied is/are the Person(s) named in and who executed the within Instrument; and he/she/they signed,
sealed and delivered the same as his/her/their act and deed for the uses and purposes therein expressed.



                                          _____
                                          Notary Public

(SEAL)
My Commission Expires: _____



State of OREGON
County of WASHINGTON    SS.:

I CERTIFY that on_____, _____
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached Instrument;
(b) was authorized to and did execute this Instrument as Authorized Signer of Seterus, Inc., the entity named in
this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.



                                          _____,
                                          Name and Title
                                          Printed Name:
(SEAL)
My Commission expires: _____


TROJANIAK, STANISLAW
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT   Form 3179 1.01 (rev. 06.12)          DFL
                                                                                                          Page 7 of 8

### Exhibit A

BEGINNING ON THE SOUTHERLY SIDE OF HADLEY AVENUE AT A POINT DISTANT ONE HUNDRED SEVENTY (170) FEET WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF HADLEY AVENUE AND THE SOUTHWESTERLY SIDE OF MAIN AVENUE, AND 1. SOUTHERLY AT RIGHT ANGLES TO HADLEY AVENUE ONE HUNDRED AND FOURTEEN (114) FEET: THENCE 2. WESTERLY PARALLEL WITH HADLEY AVENUE, SIXTY-SEVEN AND FIFTY HUNDREDTHS (67.50) FEET; 3. NORTHERLY PARALLEL WITH THE FIRST COURSE, ONE HUNDRED FOURTEEN (114) FEET TO THE SOUTHERLY SIDE OF HADLEY AVENUE, AND THENCE 4. EASTERLY AND ALONG THE SAME SIXTY-SEVEN AND FIFTY HUNDREDTHS (67.50) FEET TO THE POINT AND PLACE OF BEGINNING. BEING THE SAME PREMISES CONVEYED TO THE GRANTORS HEREIN BY DEED FROM JAN JANIAK AND KRYSTYNA JANIAK, HIS WIFE, DATED NOVEMBER 1, 1984, RECORDED NOVEMBER 16, 1984 IN BOOK F113 PAGE 489. BASED UPON A SURVEY MADE BY BEHAR SURVEYING ASSOCIATES, P.S. DATED MAY 16, 1988. Being more commonly known as 51 Hadey Aye, Clifton, Clifton City, New Jersey, 07011. Also Known As: 51 HADLEY AVE, CLIFTON, NJ 07011-0000

———————————————— [Space Above This Line For Recording Data] ————————————————

L790AJ.1

Loan Number:
Investor Loan Number:
Seterus NMLS ID Number:

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 17th day of May, 2017, between
TROJANIAK, STANISLAW, TROJANIAK, MARIA ("Borrower") and Seterus, Inc. ("Servicer") Loan
Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards
Rider, if any, dated November 10, 2003 and recorded in Book or Liber M4075, at page(s) 24,
Instrument Number 2004000046, of the County Records of Passaic and (2) the Note, bearing the
same date as, and secured by, the Security Instrument, which covers the real and personal property
described in the Security Instrument and defined therein as the "Property", located at
   51 HADLEY AVE, CLIFTON NJ 07011-0000,

the real property described being set forth as follows:
   Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of July 01, 2017, the amount payable under the Note and the Security Instrument (the
   "Unpaid Principal Balance") is U.S. $226,342.43, consisting of the unpaid amount(s) loaned to
   Borrower by Lender plus any interest and other amounts capitalized.

TROJANIAK, STANISLAW   3
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1.01 (rev. 06.12)   DFL
Page 1 of 8

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.125%, from June 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $1,110.22, beginning on the 1st day of July, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 5.125% will remain in effect until principal and interest are paid in full. If on June 01, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of 1,018.67 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing July 01, 2017.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make

all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender, on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9.  Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with

obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

_____          _____
Seterus, Inc.   Authorized Signer                               Date


_____          _____
TROJANIAK, STANISLAW                                         Date
51 HADLEY AVE, CLIFTON, NJ 07011


_____          _____
TROJANIAK, MARIA                                                Date
51 HADLEY AVE, CLIFTON, NJ 07011

_____[Space Below This Line For Acknowledgments] _____

CERTIFICATE OF ACKNOWLEDGMENT

State of **NEW JERSEY**                         )
                                                )
County of_____                )

        On the_____day of_____,_____,
before me,_____, a Notary Public of the State
and County aforesaid personally appeared  **TROJANIAK, STANISLAW and TROJANIAK, MARIA**, who I am
satisfied is/are the Person(s) named in and who executed the within instrument; and he/she/they signed,
sealed and delivered the same as his/her/their act and deed for the uses and purposes therein expressed.

                                        _____
                                        Notary Public

(SEAL)
My Commission Expires: _____

State of OREGON
County of WASHINGTON    SS.:

I CERTIFY that on_____, _____
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as Authorized Signer of Seterus, Inc., the entity named in
this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.

                                        _____
                                        Name and Title
                                        Printed Name:

(SEAL)
My Commission expires: _____

TROJANIAK, STANISLAW
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT   Form 3179 1.01 (rev. 06.12)

### Exhibit A

BEGINNING ON THE SOUTHERLY SIDE OF HADLEY AVENUE AT A POINT DISTANT ONE HUNDRED SEVENTY (170) FEET WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF HADLEY AVENUE AND THE SOUTHWESTERLY SIDE OF MAIN AVENUE, AND 1. SOUTHERLY AT RIGHT ANGLES TO HADLEY AVENUE ONE HUNDRED AND FOURTEEN (114) FEET: THENCE 2. WESTERLY PARALLEL WITH HADLEY AVENUE, SIXTY-SEVEN AND FIFTY HUNDREDTHS (67.50) FEET; 3. NORTHERLY PARALLEL WITH THE FIRST COURSE, ONE HUNDRED FOURTEEN (114) FEET TO THE SOUTHERLY SIDE OF HADLEY AVENUE, AND THENCE 4. EASTERLY AND ALONG THE SAME SIXTY-SEVEN AND FIFTY HUNDREDTHS (67.50) FEET TO THE POINT AND PLACE OF BEGINNING. BEING THE SAME PREMISES CONVEYED TO THE GRANTORS HEREIN BY DEED FROM JAN JANIAK AND KRYSTYNA JANIAK, HIS WIFE, DATED NOVEMBER 1, 1984, RECORDED NOVEMBER 16, 1984 IN BOOK F113 PAGE 489. BASED UPON A SURVEY MADE BY BEHAR SURVEYING ASSOCIATES, P.S. DATED MAY 16, 1988. Being more commonly known as 51 Hadey Aye, Clifton, Clifton City, New Jersey, 07011. Also Known As: 51 HADLEY AVE, CLIFTON, NJ 07011-0000